UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF
NEW YORK

| | |
|---|---|
| JANE ROE,<br><br>    Plaintiff,<br><br> v.<br><br>THE CITY OF NEW YORK,<br><br>AUXILIARY POLICE OFFICER MANNY GUERRERO, in his official and individual capacities,<br><br>JOHN/JANE DOE POLICE OFFICERS 1-10,<br><br>    Defendants. | Hon. _____<br><br>Civil Action No.:  1:24-cv-7093<br><br>**COMPLAINT AND JURY DEMAND** |

## COMPLAINT AND JURY DEMAND

1. Plaintiff, JANE ROE, by and through her undersigned attorneys, the Lento Law Group P.C., and by way of Complaint, brings this action for damages and other legal and equitable relief against the Defendants, THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT, AUXILIARY POLICE OFFICER MANNY GUERRERO, in his official and individual capacities, and JOHN/JANE DOE POLICE OFFICERS 1-10, alleging as follows:

## JURISDICTION AND VENUE

2. Plaintiff brings this action to redress the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983 as more fully set forth herein.

3. This Court has subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343.

4.    This Court also has supplemental jurisdiction over Plaintiff's related state claims pursuant to 28 U.S.C. § 1367(a), as such claims are so related to the §1983 claims that they form part of the same case or controversy and arise out of a common nucleus of operative fact.

5.    Venue is proper in this district pursuant to 28 U.S.C. 1391(b)(1) & (b)(2), as all Defendants reside or resided in this district and the events giving rise to the claims occurred in this district.

## THE PARTIES

6.    At all times relevant herein, Plaintiff, Jane Roe (hereinafter, "Plaintiff"), is a resident of the County of New York, State of New York.

7.    At all times relevant herein, Defendant THE CITY OF NEW YORK (hereinafter, "New York City" or "the City") is a municipal corporation organized and existing under the laws of the State of New York and maintains its principal office in the County of New York, with an agent for service of process being The New York City Law Department located at 100 Church Street New York, NY 10007.

8.    At all times relevant herein, Defendant THE NEW YORK CITY POLICE DEPARTMENT (hereinafter, the "NYPD" or "the Department") is an agency of the City of New York and is the primary law enforcement entity within same. The Department is charged with law enforcement duties within the City. The Department's agent accepting service of process is the New York City Law Department located at 100 Church Street New York, NY 10007.

9.    At all times relevant herein, Defendant AUXILIARY POLICE OFFICER MANNY GUERRERO (hereinafter "Officer Guerrero") is a sworn officer employed by the Department in the Department's Auxiliary Police. Defendant Guerro is sued in both his official and individual capacities, and is servable at the New York City Police Department via its agent for service of process, New York City Law Department located at 100 Church Street New York, NY 10007. At

all times relevant, he was acting as a City of New York police officer with such authority under the color of law.

10.     At all times relevant herein, Defendants JOHN/JANE DOE POLICE OFFICERS 1-10 (fictitious defendants) are sworn law enforcement officers employed by the Department and City. Said Defendants were obligated to prevent and/or report the actions contained herein but failed to do so. JOHN/JANE DOE POLICE OFFICERS 1-10 are believed to be individuals whose actions or omissions contributed in some relevant and material way to the causes of action complained of herein. Plaintiff does not presently know the true identities of these Defendants but will seek leave to amend the Complaint to properly name these Defendants after conducting discovery, should the need arise.

## GENERAL FACTUAL ALLEGATIONS

11.     On or about June 21, 2023, Plaintiff went to the New York City Police Department's 32nd Precinct (hereinafter "the Precinct") to file a police report regarding ongoing harassment from her former partner.

12.     This harassment included the use of sexually explicit images, taken of Plaintiff without Plaintiff's knowledge or consent, for extortion.

13.     Upon arriving to the Precinct, Plaintiff searched for a female officer; however, none were available. A male officer offered to assist her and escorted her to a desk to wait for another officer to take her statement.

14.     Defendant JOHN DOE OFFICER 1 sat across from Plaintiff.

15.     At the aforesaid time and place, Officer Guerrero stood beside Defendant JOHN DOE OFFICER 1.

16.     Officer Guerrero was, at all times relevant, a member of the New York Police Department's Auxiliary Police Program.

17.    Officer Guerrero was, at all times relevant, wearing a New York Police Department uniform.

18.    At all times relevant, any New York City Police Officer had authority to direct the actions of Auxiliary Officer Guerrero.

19.    Per the New York Police Department's website, "The NYPD's auxiliary police program is the largest auxiliary police program in the United States."

20.    At all times relevant, New York Police Department's Auxiliary Police Program candidates receive New York Police Department administered training regarding how to perform the auxiliary police officers' official duties.

21.    At all times relevant, New York Police Department's Auxiliary Police Program candidates receive New York Police Department approved training regarding how to perform the auxiliary police officers' official duties.

22.    Per the New York Police Department's website, the auxiliary police officers' official duties include patrolling, maintaining order, and assisting "crime prevention activities."

23.    Defendant John Doe Officer 1 took a report from Plaintiff and had her write a statement regarding the aforesaid harassment.

24.    Defendant John Doe Officer 1 instructed Plaintiff to proceed to the Courthouse to file for an Order of Protection against her former partner

25.    Plaintiff then exited the Precinct building.

26.    In so doing, while walking down the stairs, Plaintiff heard someone call to her.

27.    Upon turning around, she recognized Officer Guerrero.

28.    Officer Guerrero asked if Plaintiff knew about the New York Police Department's Auxiliary Police Program.

29.     The Plaintiff stated she was aware of the New York Police Department's Auxiliary Police Program and had considered joining.

30.     Officer Guerrero urged Plaintiff to back inside the Precinct House.

31.     Officer Guerrero stopped at the Precinct's front desk.

32.     Upon information and belief, Officer Guerrero's conversation with the officer who manned the Precinct's front desk was to obtain permission to take Plaintiff to the basement.

33.     Upon information and belief, this conversation was to obtain permission to take Plaintiff to the basement to conduct an unsupervised interview of a victim of a sex-based crime.

34.     Officer Guerrero led Plaintiff down into the basement of the Precinct House, through a locker room, and into a private office.

35.     Officer Guerrero then closed the door of the isolated basement office, leaving Plaintiff alone with him.

36.     Officer Guerrero spoke at length about the New York Police Department's Auxiliary Police Program.

37.     Throughout the aforesaid conversation, Officer Guerrero repeatedly stated he "was a big deal" in the Precinct and gave the continued impression through words and conduct that he had the power of a City of New York police officer as well as influence to ensure Plaintiff was admitted to the New York Police Department's Auxiliary Police Program, and to help her attain future promotions.

38.     Plaintiff shared some personal details of her life with Defendant Officer Guerrero, including how joining the program at an earlier age may have changed her life.

39.     During this conversation, Plaintiff became emotional and began to cry.

40.     Officer Guerrero then instructed Plaintiff to get up and give him a hug.

41.    Officer Guerrero then shifted the conversation to his personal life and how he behaves outside of work.

42.    At this time Defendant JOHN DOE OFFICER 2, who Plaintiff spoke with briefly prior to giving her statement, knocked, and entered the office.

43.    John Doe Officer 2 then asked Plaintiff if she was okay, and if she got the assistance she needed upstairs.

44.    Upon information and belief, John Doe Officer 2 was concerned about Officer Guerrero and Plaintiff being in an isolated basement office behind closed doors and felt a need to check on Plaintiff.

45.    John Doe Officer 2 nonetheless left the isolated office, once again leaving Officer Guerrero and Plaintiff alone  together.

46.    Officer Guerrero instructed Plaintiff to type her telephone number into his cellular phone  and  proceeded to send Plaintiff a text to ensure she had his number as well.

47.    At the time, Plaintiff presumed this to be for purposes of communicating further regarding the New York Police Department's Auxiliary Police Program.

48.    Plaintiff again became emotional, at which point Officer Guerrero again hugged her.

49.    After the second hug, Officer Guerrero moved his chair closer to Plaintiff's chair.

50.    Officer Guerrero then stated to Plaintiff that if he started to "come onto her," that she should not tell anyone in the Precinct because there was already another female in the Precinct who had reported that he had engaged in some related conduct.

51.    Plaintiff, uncomfortable, attempted to redirect the conversation back to her situation and the New York Police Department's Auxiliary Police Program.

52.    Officer Guerrero asked to see the intimate photographs being used by Plaintiff's former partner to extort her.

53.    Plaintiff assumed this to be for genuine law enforcement purposes and proceeded to show Officer Guerrero the photographs, while placing her hand partially over the phone such that it covered the nude portions of the photographs.

54.    Officer Guerrero moved Plaintiff's hand away from her telephone's screen so that he could see the complete pictures.

55.    Upon seeing the photographs, Officer Guerrero took Plaintiff's hand and lifted her from her chair.

56.    He then spun Plaintiff around in order to see her full body.

57.    Plaintiff stated this made her uncomfortable, as she did not desire to display her body to Officer Guerrero.

58.    Plaintiff told Defendant Guerrero that she was uncomfortable showing her body due to her recent weight loss.

59.    Plaintiff then received a phone call from her daughter who was wondering when Plaintiff would be returning home.

60.    Consequently, Plaintiff then advised Officer Guerrero she needed to leave soon.

61.    Officer Guerrero then asked to see pictures of what Plaintiff looked like prior to her recent weight loss.

62.    Plaintiff hesitantly complied with Officer Guerrero's requests.

63.    Officer Guerrero made several comments about Plaintiff's appearance.

64.    Officer Guerrero again attempted to spin Plaintiff, then grabbed Plaintiff by the waist and pulled her towards onto his lap.

65.    Plaintiff attempted to move away from Officer Guerrero, but he  pulled Plaintiff back down onto his lap.

66.     Officer Guerrero then placed one hand on Plaintiff's thigh and the other around her hips, restricting her movement.

67.     Officer Guerrero asked if she "could feel that?" indicating that he had erection.

68.     Plaintiff stated she was uncomfortable and again attempted to stand up.

69.     Despite Plaintiff's statement and continued attempts to escape, Officer Guerrero continued to restrain Plaintiff, holding her on his lap.

70.     At this point, Plaintiff, a sexual assault survivor, began to suffer symptoms pf Post Traumatic Stress Disorder.

71.     Officer Guerrero began to pull at Plaintiff's shirt and to make comments about her breasts.

72.     Officer Guerrero pulled down Plaintiff's shirt and brassiere and placed his mouth on Plaintiff's breast.

73.     Plaintiff was able to pull away and restated that she had to leave.

74.     Officer Guerrero directed Plaintiff to again follow him.

75.     Officer Guerrero led Plaintiff upstairs and past the Precinct's front desk.

76.     Officer Guerrero led Plaintiff outside, around the Precinct building, and into a Precinct garage.

77.     Officer Guerrero led Plaintiff to a motor vehicle and directed her to enter said motor vehicle.

78.     Officer Guerrero was allowed to drive from the Precinct garage, in his personal vehicle, with a crime victim, and was not detected nor stopped by any officer or supervisor to inquire as to the purpose of his departure.

79.     Plaintiff was led to believe that Officer Guerrero intended to drive her home and entered the motor vehicle's passenger seat.

8

80.    At some point in the drive, Plaintiff noticed they were not following the correct route to her home and inquired where they were going.

81.    Officer Guerrero stated they were going to a gas station.

82.    Upon information and belief, this gas station was the BP Gas Station located at 99 E 149th St, Bronx, NY 10451.

83.    Officer Guerrero exited the vehicle, began to fuel his vehicle, and removed his uniform shirt.

84.    Under his uniform shirt was a white undershirt.

85.    Officer Guerrero then reentered the vehicle and asked if Plaintiff really had to go back to her home.

86.    Plaintiff answered affirmatively, that yes, she did.

87.    Officer Guerrero urged Plaintiff to stay with him for forty-five (45) more minutes, and when Plaintiff declined, he asked her to stay for 10-15 more minutes.

88.    Plaintiff reasonably believed that Officer Guerrero was armed with a City of New York police issue firearm.

89.    Plaintiff, who felt compelled to accede to an officer's power, authority, and demands, agreed.

90.    Officer Guerrero told Plaintiff that he wanted her to remain in his car while he showed her his patrol area as part of his efforts to recruit Plaintiff into the New York Police Department's Auxiliary Police Program.

91.    Officer Guerrero then drove into a dead-end alley within his patrol area and parked his motor vehicle.

92.    Officer Guerrero did not leave his patrol area at any time during the assault as alleged herein.

93.    Officer Guerrero proceeded to comment that no one would find Plaintiff and him as the alley was part of his patrol area.

94.    The aforesaid remark made Plaintiff reasonably believe that she was in danger and was subject to Officer Guerrero's power and authority as a police officer.

95.    Officer Guerrero then instructed Plaintiff to move to the backseat of the vehicle.

96.    Understanding his power and authority as a City of New York police officer and believing him to be armed with a weapon issued by the City of New York, Plaintiff reluctantly complied

97.    Plaintiff was concerned for her safety if she refused to  comply with Defendant Officer Guerrero's instructions.

98.    Once in the backseat, Officer Guerrero again touched Plaintiff's breasts.

99.    Plaintiff pushed away Officer Guerrero's hands and stated she was uncomfortable and wanted him to stop.

100.    Rather than stopping, Officer Guerrero forced Plaintiff's hand onto his erect penis.

101.    Plaintiff again reiterated her discomfort.

102.    Even so, Officer Guerrero proceeded to remove his pants, indicating his desire to engage in sexual intercourse with Plaintiff.

103.    Plaintiff, feeling trapped by a City of New York police officer who she believed to be armed in a dead-end alley in his patrol area, stated that if he was going to do this, he should get a condom.

104.    Plaintiff made this request as an attempt to buy time and forestall the unwanted sexual intercourse.

105.    Again, Plaintiff believed, as a law enforcement officer, Officer Guerrero was armed with a weapon issued by the City of New York.

106.    Further, the interior of his vehicle contained switches and controls similar to what Plaintiff would expect to see in an official police vehicle.

107.    Plaintiff believed that Defendant Officer Guerrero was capable of locking the vehicle from the inside.

108.    Plaintiff was in fear for her life and safety if she refused to comply with Officer Guerrero.

109.    Plaintiff stated on numerous occasions throughout the evening that she was uncomfortable and wished for Officer Guerrero to stop, however, these requests went unheeded.

110.    Officer Guerrero drove to a nearby convenience store to procure condoms.

111.    Prior to going inside, he directed Plaintiff to remove her pants.

112.    Officer Guerrero proceeded into the store, and was inside for a period of approximately two minutes.

113.    Plaintiff did not remove her pants during this time.

114.    Officer Guerrero returned to the vehicle with a bottle of water and a pack of condoms.

115.    Upon seeing that Plaintiff had not removed her pants, Officer Guerrero made a comment about her non-compliance.

116.    Officer Guerrero then drove back to the dead-end alley, and returned to the back seat where he  again partially disrobed.

117.    Officer Guerrero proceeded to put on the condom and directed Plaintiff to disrobe.

118.    At this point Plaintiff remained in fear for her safety and felt forced to engage in sexual  relations with Officer Guerrero.

119.    Officer Guerrero commanded Plaintiff to get up.

120.    Plaintiff resisted Officer Guerrero's commands, at which point he grabbed her by the waist and  pulled her onto him so that she was on top of his lap, facing away from him.

121.    Plaintiff closed her eyes and waited for the assault to end.

122.    The sexual assault and/or rape, lasted approximately five minutes.

123.    At the end of the assault, Officer Guerrero exited his vehicle and proceeded to a nearby trashcan, whereupon, upon information and belief, he disposed of the used condom.

124.    Plaintiff dressed herself and moved back to the front seat.

125.    Plaintiff then asked again to be taken home.

126.    Plaintiff remained with Guererro out of fear for her safety and the risk of being abandoned in a dead-end alley with a nearly dead cellular phone.

127.    After he had completed the assault and/or rape, Officer Guerrero finally agreed to take Plaintiff home.

128.    During the drive, Officer Guerrero repeatedly stated that the sexual encounter was "great for him" and asked how Plaintiff would rate him.

129.    Officer Guerrero continued the conversation by repeatedly stating that he hopes Plaintiff will not tell anyone at the Precinct what happened.

130.    Upon arriving at Plaintiff's home, Plaintiff, now in a state of shock, proceeded upstairs to her residence.

131.    Officer Guerrero later sent Plaintiff a text message at 9:23PM, again stating "[t]hat was great", and asking for a copy of her driver's license, purportedly for Plaintiff's application to the Departments Auxiliary Program.

132.    Plaintiff sent Officer Guerrero an image of her driver's license.

133.    The next day, Officer Guerrero sent two additional text messages, attempting to begin a conversation; Plaintiff ignored both messages.

134.    The following day, Officer Guerrero again sent a text message asking, "[h]ey are you okay," to which Plaintiff responded that she did not wish to talk.

135.    Officer Guerrero followed up by saying that he was just ensuring she was okay and asked what day she could come back to the Precinct.

136.    Plaintiff informed Officer Guerrero that she changed her mind about the program because she was no longer comfortable with the concept, to which Officer Guerrero replied, "I ruined it" and urged her not to give up on him.

137.    Plaintiff proceeded to inform Officer Guerrero that she "felt violated" and that her only intent in the Precinct that day was to file a police report and receive an Order of Protection.

138.    She further stated that she felt Officer Guerrero manipulated her by knowing she was vulnerable due to her status as a victim and that she felt he swindled her into showing him the intimate photographs, and further, manipulated her into engaging in sexual relations.

139.    Plaintiff asked Officer Guerrero to stop contacting her.

140.    Officer Guerrero sent another message despite Plaintiff making clear she did not wish to have any further contact, said message stating that he did not want her to feel that way.

## COUNT I
## § 1983 – FOURTEENTH AMENDMENT VIOLATION
## DEPRIVATION OF PERSONAL SECURITY, BODILY INTEGRITY AND EQUAL PROTECTION
### As to Defendant Officer Guerrero

141.    Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

142.    Under the Fourteenth Amendment to the United States Constitution, Plaintiff had the right as a citizen of the United States to personal security, bodily integrity, and equal protection under the law.

143.    Officer Guerrero repeatedly violated Plaintiff's  rights to personal security, bodily integrity, and equal protection under the law.

144.    Officer Guerrero, as an on-duty officer, who encountered Plaintiff only through his official duties, was acting under the color of the law at all times relevant.

145.    Officer Guerrero's conduct was objectively unreasonable.

146.    Here, Officer Guerrero's conduct was prohibited by both federal and state law.

147.    Plaintiff had a clearly established right to be free from sexual assault by a police officer, and Officer Guerrero's conduct was not objectively reasonable.

148.    Rather, Officer Guerrero willfully, maliciously and calculatedly, used his position of public trust and authority as a law enforcement officer, to manipulate and coerce Plaintiff into a situation where he would be free to sexually assault her.

149.    Officer Guerreros' forceable penetration of Plaintiff in the most intimate area of her body deprived her of bodily autonomy.

150.    Further, Officer Guerrero took Plaintiff into a vehicle that resembles the interior of a police car, refusing to comply with her requests to stop sexual contact and her requests to be driven home, all while in uniform, in his police vehicle, and with Plaintiff under the reasonable impression Officer Guerrero was armed.

151.    Plaintiff had the right to not be sexually assaulted by a government employee while being confined by him.

152.    Officer Guerrero deprived  Plaintiff of any sense of personal safety during the encounter.

153.    Officer Guerrero's actions caused Plaintiff serious physical, emotional, psychological, and mental injuries.

154.    Defendant Officer Guerrero is thus liable for compensatory damages, attorney's fees, and costs.

**COUNT II**
**§ 1983 – FOURTH AND FOURTEENTH AMENDMENT VIOLATION**
**EXCESSIVE FORCE**
**As to Defendant Officer Guerrero**

155. Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

156. Defendant Officer Guerrero intentionally raped and sexually assaulted the Plaintiff while acting under color of law.

157. Defendant Officer Guerrero's intentional rape and sexual assault of the Plaintiff violated her clearly established right not to be subjected to excessive force.

158. Defendant Officer Guerrero's intentional rape and sexual assault of the Plaintiff was objectively unreasonable.

159. There was no need for the application of any force against Plaintiff.

160. On the date in question, Plaintiff was not the suspect to any crime nor under arrest.

161. No reasonable officer would believe the rape or sexual assault of Plaintiff to be a reasonable use of force.

162. Defendant Officer Guerrero's use of unreasonable force caused Plaintiff serious physical, emotional, psychological, and mental injuries.

163. Defendant Officer Guerrero is thus liable for compensatory damages, attorney's fees, and costs.

**COUNT II**
**§ 1983 – FOURTEENTH AMENDMENT VIOLATION**
**FAILURE TO INTERVENE, INVESTIGATE, & PROTECT FROM ATTACK**
**As to Defendant John Doe Officer 1 and John Doe Officer 2**

164. Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

165. Under the Fourteenth Amendment to the United States Constitution, Plaintiff had

the right as a citizen of the United States to personal security, bodily integrity, and equal protection under the law.

166.    The City and the Department owed a duty to the Plaintiff to ensure she was safe from attack, in a City owned property, by one of their employees acting under the color of the law.

167.    Further, the City and the Department had a duty to intervene during the assault. The City and the Department had the opportunity to do so when John Doe Officer 2 entered the office to check on the Plaintiff. It is evident from John Doe Officer 2's conduct that he felt there was need to check on the Plaintiff when she was alone with Guerrero. However, John Doe Officer 2 failed to take appropriate action and as a result the assault continued and escalated.

168.    This duty arose in part under the Departments own policy attached hereto as Exhibit A: NYPD Patrol Guide, Procedure No. 202-01 which states at section 11 that a Police Officer will "[i]investigate suspicious conditions and circumstances on the post."

169.    Further, the Precinct front desk had two opportunities to intervene and prevent the harm. First, when Guerrero initially requested to take Plaintiff into a basement office, alone and unsupervised, which John Doe Officer 2 witnessed. Second, when Guerrero was leading Plaintiff out of the building and it should have been evident, to a reasonable law enforcement professional, that she was in distress, including John Doe Officer 1.

170.    This duty arose in part under the Departments own policy attached hereto as Exhibit B: NYPD Patrol Guide, Procedure No. 202-18 which states that the Desk Officer will "[b]e responsible for all police operations within command during tour."

171.    The Defendants had a reasonable opportunity to intervene and investigate.

172.    The Defendants failed to timely intervene and investigate, and thus, subjected Plaintiff to violations of her right to personal security, bodily integrity, and equal protection under the law by:

a. failing to promptly report potential sexual harassment/assault and inappropriate conduct;

b. failing to promptly investigate potential sexual harassment/assault and inappropriate conduct;

c. manifesting deliberate indifference to the sexual harassment/assault.

173. The Defendants, through their actions or inactions, have advanced unconstitutional customs, practices, or policies by failing to timely intervene, investigate and protect Plaintiff from violations of her aforesaid rights by Defendant Guerrero.

174. Plaintiff has suffered extreme emotional distress and psychological damage, and her character and standing in his community have suffered, as a direct and proximate result of the sexually abusive and exploitative conduct that was furthered by the failures of the Defendants, manifesting deliberate indifference towards Plaintiff's constitutional rights.

## COUNT IV
### § 1983 – *MONELL* LIABILITY
**As to Defendant City**

175. Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

176. Under the Fourteenth Amendment to the United States Constitution, Plaintiff had the right as a citizen of the United States to personal security, bodily integrity, and equal protection under the law.

177. The City owed a duty to the Plaintiff to ensure she was safe from constitutional violations, in a City owned building and vehicle, by one of their employees acting under the color of the law.

178. Defendant Officer Guerrero repeatedly violated these rights of Plaintiff.

17

179.    The Defendant was a all state employee, acting under the color of state law at the time some or all violations occurred.

180.    Sexual assault of civilians by New York City police officers is a widespread problem within the New York City Police Department.

181.    A study surveying almost 1,000 youth in New York City found that two out of five young women reported being sexually harassed by New York Police officers.

182.    In 2019, a woman filed a $150 million lawsuit accusing a New York City police officer of rape.

183.    In 2021, a disciplinary trial judge found that two New York City officers had engaged in "shocking professional and sexual misconduct" by exchanging sexually explicit messages to and inappropriately touch a fifteen-year-old girl.

184.    In 2022, the City of New York settled a lawsuit with a woman who accused two New York City police officers of raping her.

185.    In 2024, two New York City police officers for raping an incapacitated woman.

186.    Two officers were charged with the rape, sexual assault, and kidnapping found marijuana in an 18-year-old's vehicle, handcuffed her, placed her in the back of a police van, and forced her to have sexual intercourse with one officer and perform oral sex on the other officer.

187.    After the officers described in the preceding paragraph were permitted to plead guilty to bribery and official misconduct, City Council Member Mark Treyger stated the following: "I am disgusted. The bottom line is two NYPD detectives raped a teenager in their custody in my district and they are not going to jail, nor will they be registered as sex offenders. That is the sorry state of our justice system. This is why it is so difficult for survivors of sexual assault to come forward."

188.    High-ranking Detective Neftali Cruz was able to stalk, harass, and eventually rape a fellow police officer despite widespread knowledge amongst other officers in his precinct that he was acting inappropriately towards her.

189.    Defendant City did not take reasonable measures to prevent the occurrences of sexual assault that it knew were frequent throughout the police department.

190.    The Defendants adopted the following widespread, well-settled customs and policies:

     a. Failing to implement reasonable surveillance measures in precincts to monitor interactions between auxiliary officers and civilians;

     b. Failing to implement reasonable surveillance measures in police vehicles to monitor interactions between auxiliary officers and civilians;

     c. Failing to maintain supervision of auxiliary police officers while they interact with civilians;

     d. Failing to maintain supervision of auxiliary police officers who are investigating sexually-based crimes;

     e. Failing to train auxiliary officers on interacting with civilians who have experienced sexually-based crimes;

     f. Permitting auxiliary officers to leave police property with a civilian in their vehicle;

     g. Failing to monitor auxiliary officers who were taking civilians into a secluded basement;

     h. Failing to monitor auxiliary officers who were taking civilians into their police vehicles;

     i. Failing to monitor auxiliary officers who were taking civilians off of the precinct premises;

j.  Failing to train auxiliary officers on investigating sexually-based crimes; and

k.  Failing to implement any reasonable measures to prevent sexual assaults by New York City police officers.

191.   The widespread customs described in paragraph XX were so well-settled as to carry the force of law.

192.   The City's widespread, well-settled practices described in paragraph XX were a moving force behind the violation of Plaintiff's constitutional rights. .

193.   Thus, the failures of the Department and city, both in practice and as reflected in their failure to adhere to policies, to adequately train and supervise employees and supervisors amounted to deliberate indifference to the fact that inaction would, and proximately did, result in the violation of Plaintiff's rights by Officer Guerrero.

194.   The City's de facto policies caused Plaintiff serious physical, emotional, psychological, and mental injuries.

195.   The City of New York is liable for compensatory damages, attorney's fees, and costs.

**COUNT V**
**NEGLIGENCE**
**As to All Defendants**

196.   Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

197.   All Defendants named herein owed a duty of care to Plaintiff.

198.   Specifically:

a.  Officer Guerrero and Defendant City, owed Plaintiff owed a duty of care as municipality which charged the Department with its law enforcement duty and therefore the duty to supervise its officers as well;

b.  Defendant Officer Guerrero owed Plaintiff a duty of care first as a person who

owed all others a duty to use reasonable care to avoid causing injury to them.

199.    All Defendants have breached their respective duty of care to Plaintiff in that they all failed to take ordinary reasonable care in the execution of their respective professional or personal responsibilities imposed by law and as complained of herein.

200.    Specifically, but-for the failure of the Defendants to failure to adhere to its own policies and the conduct a reasonable person would exhibit, the instances of known sexual assault perpetrated by Defendant Officer Guerrero upon Plaintiff would not have occurred.

201.    Defendant Officer Guerrero's behavior was clearly unreasonable by any measure and therefore is breach of his duty not to cause injury to another person.

202.    It is reasonably foreseeable that Plaintiff and similarly situated individuals within City of New York and the confines of the 32nd Precinct, and thus, under the care, supervision, and charge of the City and District Defendants and Defendant Officer Guerrero, could have been harmed in the same or similar manner in which Plaintiff was harmed when the Department and City and its constituent administrators and staff fail to take appropriate and timely action in light of internal policy and reasonable practices when observing a potential for sexual misconduct.

203.    Therefore, the respective failures of all Defendants were both the actual and proximate cause of the damages caused to Plaintiff.

204.    Defendants caused Plaintiff serious physical, emotional, psychological, and mental injuries.

205.    Defendants are thus liable for compensatory damages, attorney's fees, and costs.

**COUNT VI**
**GROSS NEGLIGENCE, RECKLESSNESS**
**As to All Defendants**

206.    Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

207.    All Defendants, as plead in the previous Count (Count V), had a duty of care towards Plaintiff to take reasonable steps to prevent Defendant Officer Guerrero from using the authority, access, and instrumentalities afforded him by his position within the Department, to target, groom, and sexually abuse women, including Plaintiff.

208.    All Defendants acted in a negligent, careless, or reckless manner, and/or in a grossly negligent manner with gross and callous indifference to the consequences, and thus breached their aforementioned duties of care.

209.    Plaintiff was an individual of whom all Defendants knew or should have known of the probability of harm which was foreseeably occasioned by the reckless indifference of the Defendants to the consequences of their actions and/or omissions.

210.    As a direct and proximate result thereof, Plaintiff was caused to suffer and continues to suffer significant and permanent damages.

211.    Defendants caused Plaintiff serious physical, emotional, psychological, and mental injuries.

212.    Defendants are thus liable for compensatory damages, attorney's fees, and costs.

### COUNT VII
### ASSAULT AND BATTERY
**As to Defendant Guererro**

213.    Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

214.    As complained of herein, Defendant Officer Guerrero, on a multitude of occasions across one evening, attempted to, and in fact, did, cause harmful, offensive, unwanted, and sexually violent physical contact with Plaintiff.

215.    As a direct and proximate result of the willful, wanton, malicious, and intentional actions of Defendant Officer Guerrero, Plaintiff has suffered severe physical abuse and extreme

emotional distress and psychological damage as previously complained of herein, which may prove to be permanent.

216.    Defendants caused Plaintiff serious physical, emotional, psychological, and mental injuries.

217.    Defendants are thus liable for compensatory damages, attorney's fees, and costs.

**COUNT VIII**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**As to All Defendants**

218.    Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

219.    Defendant Officer Guerrero, when engaging in the repeated acts of sexual assault and exploitation of Plaintiff as complained of herein, acted intentionally or with reckless disregard, so as to cause Plaintiff significant and permanent damages.

220.    Defendant Officer Guerreros's repeated acts of sexual assault and exploitation of Plaintiff as complained of herein constitutes behavior that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

221.    Further, the City and Department Defendants acted intentionally or with reckless disregard in failing to timely intervene, investigate, and/or address the outrageous sexual misconduct of Defendant Officer Guerrero.

222.    Given the conduct of the Defendants and the power and authority afforded them in their respective positions within the community, their failure to act so as to safeguard Plaintiff from sexual assault constitutes behavior that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

223.    The actions, therefore, of the Defendants actually and proximately caused damages to Plaintiff so severe that no reasonable person could be expected to endure it, and thus, has resulted in significant and permanent harm.

224.    Defendants caused Plaintiff serious physical, emotional, psychological, and mental injuries.

225.    Defendants are thus liable for compensatory damages, attorney's fees, and costs.

**COUNT VIII**
**FALSE IMPRISONMENT**
**As to Defendant Officer Guerrero**

226.    Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

227.    Officer Guerrero on more than occasion forcibly restrained Plaintiff in order to pursue his sexual advances.

228.    First, Officer Guerrero pulled Plaintiff into his lap and when she attempted to escape, he placed one hand across her thighs to hold her in place and another around her back to prevent her moving backwards.

229.    Second, Officer Guerrero manipulated the Plaintiff to enter his car and once in the car, without permission and despite objection, drove to another location.

230.    Finally, while in the backseat of Officer Guerreros' car parked in the dead-end alley Officer Guerrero again pulled Plaintiff into his lap in order to sexually assault her, during the assault she was trapped between Officer Guerreros' body and the front seat of the vehicle.

231.    In all three instances, Plaintiff made clear her desire to leave, nonetheless Officer Guerrero continued to restrain her. Further, the restraint was in no way lawful as Officer Guerrero had no basis to detain her as a law enforcement officer or otherwise.

232.    These actions were a direct and proximate cause of injury to the Plaintiff.

233.    Defendants caused Plaintiff serious physical, emotional, psychological, and mental injuries.

234.    Defendants are thus liable for compensatory damages, attorney's fees, and costs.

## COUNT IX
## NEGLIGENCE VIA VICARIOUS LIABILITY/*RESPONDEAT SUPERIOR*
## TORT LIABILITY ASSERTED AGAINST PRINCIPAL
### As to the City of New York

235.    Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

236.    At all times relevant herein, Defendant Officer Guerrero was a sworn law enforcement officer employed by the Defendant City and an agent of Defendant City.

237.    The City had a duty, whether arising under statute, regulation, or by common law, to exercise due care with respect to the professional, ethical, and legal conduct of its business, such that no undue harm would befall anyone within the bounds of its jurisdiction.

238.    The City had a duty to exercises due care with respect to the actions of its agents.

239.    The City. breached this duty, however, with respect to Plaintiff; specifically, as a direct and proximate result of the conduct of Defendant Officer Guerrero, its employee, agent, and/or workman.

240.    Specifically, and as articulated more fully in Counts I-VIII, which are incorporated herein by reference, Officer Guerrero met Plaintiff within the execution of his official duties as charged by the City.

241.    Specifically, and as articulated more fully in Counts I-VIII, which are incorporated herein by reference, Officer Guerrero used his employment and agency as a means to harm Plaintiff.

242.    The result of Officer Guerrero's conduct, which was carried out as an agent of the

25

City of New York, was great damage to the Plaintiff, including, but not limited to, great pain and suffering, emotional pain, loss of enjoyment of life, significant medical care costs, and lasting mental trauma.

243.    At the time Guerro harmed Plaintiff in this manner, he was engaged in an employee-employer or agent-principal relationship with the City, and said conduct was committed in furtherance of the City's mission.

244.    As such, the City must be held vicariously liable for Defendant Officer Guerrero's tortious conduct as aforesaid.

245.    Defendants caused Plaintiff serious physical, emotional, psychological, and mental injuries.

246.    Defendants are thus liable for compensatory damages, attorney's fees, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff JANE ROE, prays for relief as to all counts as follows:

    a.    For judgement against the Defendants jointly, severally, and alternatively, for general, compensatory, and punitive damages, with interest;

    b.    Reasonable attorney's fees and costs of suit pursuant to 18 U.S.C. 2255; and

    c.    For such other further relief as the Court may deem equitable and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action of all issues so triable.

Respectfully submitted,

/s/ *Frank R. Schirripa*
**Hach Rose Schirripa & Cheverie LLP**
Frank R. Schirripa
112 Madison Avenue, 10th Floor

26

New York, New York 10016
Tel: (212) 213-8311
Fax: (212) 779-0028
Email: fschirripa@hrsclaw.com

Kyle Anthony Adams
**Lento Law Group, Inc.**
Kyle Anthony Adams (pro hac to Be Applied For)
3003 N. Central Avenue – Suite 685
Phoenix, AZ 85012
Tel: (856) 652-2000
Fax: (856) 677-9083
Email: kaadams@lentolawgroup.com

Jason Friedl
**Romanucci and Blandin, LLC**
Jason Friedl (Pro Hac to Be Applied For)
Sam Harton (Pro Hac to Be Applied For)
321 N. Clark St. Chicago, IL 60654
Tel: (312) 458-1000
Fax: (312) 458-1004
Email: braveendran@rblaw.net
Email: sharton@rblaw.net