USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/17/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTINA DURAN,<br><br>       Plaintiff,<br><br>    -against-<br><br>THE CITY OF NEW YORK, AUXILLIARY POLICE OFFICER MANNY GUERRERO, in his official and individual capacities, AND JOHN/JANE DOE POLICE OFFICERS 1-10, in their individual capacities,<br><br>       Defendants. | 1:24-cv-7093 (MKV)<br><br>**OPINION AND ORDER GRANTING MOTION TO DISMISS** |

**MARY KAY VYSKOCIL, United States District Judge:**

Plaintiff commenced this action with the filing of a Complaint brought under a pseudonym. [ECF No. 1]. Shortly thereafter, the Court issued an Order directing Plaintiff to file an amended Complaint suing in Plaintiff's own name. [ECF No. 4]. Plaintiff declined to do so, instead filing an *ex parte* motion to proceed pseudonymously, [ECF No. 6], which the Court denied, [ECF No. 13]. Plaintiff then filed an amended Complaint. [ECF No. 15] (the "Amended Complaint" or "AC"). Following substantial delays related to Plaintiff's service efforts,[1] Defendant the City of New York (the "City") sought leave to file a motion to dismiss, [ECF No. 45], which the Court granted, noting that Plaintiff would be afforded one "last opportunity to amend in response to any issue raised in Defendant's pre-motion letter," [ECF No. 46]. Plaintiff did so, filing a further amended Complaint. [ECF No. 49] (the "Second Amended Complaint" or "SAC").

The City moved to dismiss, [ECF No. 52] (the "Motion to Dismiss" or "MTD"), and the Motion to Dismiss has been fully briefed. [ECF Nos. 53 (the "Motion to Dismiss Memorandum"

---

[1] The Court notes that, while a Clerk's Certificate of Default has been issued with respect to individual Defendant Auxiliary Police Officer Guerrero ("Auxiliary Officer Guerrero"), [ECF No. 44], it does not appear that Plaintiff has taken any further action to prosecute her case against him.

1

or "MTD Mem."), 56 (the "Opposition" or "Opp."), 57 (the "Reply").  For the reasons herein discussed, the Motion to Dismiss is GRANTED.

## BACKGROUND

Plaintiff alleges that Auxiliary Officer Guerrero "willfully, maliciously and calculatedly, used his position of public trust and authority as a law enforcement officer to manipulate and coerce [her] into a situation where he would be free to sexually assault her," and did in fact "intentionally rape[] and sexually assault[]" her.  SAC ¶¶ 156, 164.  Specifically, Plaintiff alleges that in June 2023, she went to the 32nd Precinct of the New York City Police Department ("NYPD") to file a report for ongoing harassment by a non-party former partner.  SAC ¶ 12.  Plaintiff alleges that, while at the Precinct, she encountered Auxiliary Officer Guerrero, who took her to an isolated office in the basement of the precinct and began engaging in "uncomfortable" physical contact, including hugging her, grabbing her by the waist, pulling her onto his lap, and placing his mouth on her breast.  SAC ¶¶ 37–77.  Plaintiff further alleges that Auxiliary Officer Guerrero had previously been reported and had a reputation for abusing his office to engage in sexual misconduct with women.  SAC ¶¶ 48, 54.

Plaintiff alleges that, when she tried to leave, Auxiliary Officer Guerrero allegedly followed her, and "directed her to enter" his vehicle.  SAC ¶ 83.  Plaintiff asserts that she believed that Auxiliary Officer Guerrero was going to drive her home, but that he instead used his "power, authority and demands" to restrain her in the vehicle while he drove to a dead-end alley.  Compl. ¶¶ 85–95.  Plaintiff further alleges that she believed that Auxiliary Officer Guerrero was carrying a firearm at the time and that he was capable of locking his vehicle from the inside, as it appeared to be an official police vehicle.  SAC ¶¶ 110–15.  Plaintiff alleges that before, during, and after the encounter at the Precinct, other NYPD officers and the Precinct's front desk staff had

"opportunities to intervene and prevent the harm" but failed to do so.  SAC ¶¶ 32–36, 45–49, 81–87, 187.  She further alleges that Auxiliary Officer Guerrero was not permitted by policies governing auxiliary officers to conduct unsupervised interviews with civilians.  SAC ¶ 35.  Plaintiff alleges that, while in she was in Auxiliary Officer Guerrero's vehicle, he proceeded to sexually assault and rape her.  SAC ¶¶ 124–31.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 556 (alterations, quotations, and citations omitted).  In ruling on a motion to dismiss, the Court must "accept as true all factual allegations and draw from them all reasonable inferences; but [it is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)).  The Court's role at this stage is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 713 (S.D.N.Y. 2012) (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)).

## DISCUSSION

### I.   *Monell* Liability

Plaintiff's allegations, assumed at this juncture to be true, concern reprehensible actions by an employee of the NYPD, for which she seeks in the claims at issue here to hold the City responsible.  It is well-settled law, however, that municipalities are not vicariously liable under Section 1983 for the torts of their employees.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

"Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under [Section] 1983."  *Id.* at 694.  Any cognizable claim against a municipality based on the actions of its employee must accordingly plead "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008).

An official policy can be established in several ways.  Short of "a formal policy officially endorsed by the municipality" or "actions taken by government officials responsible for establishing the municipal polices that caused the particular deprivation in question," neither of which is alleged here, a plaintiff might also plead an official policy by alleging either

> a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (cleaned up, citations omitted, citing *Monell*, 436 U.S. at 690–91; *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403–07 (1997); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84 (1986) (plurality opinion); *Walker*

*v. City of New York*, 974 F.2d 293, 296 (2d Cir.1992); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

A "widespread[-]practice" theory must be supported by allegations of a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity." *Tieman v. City of Newburgh*, No. 13–CV–4178 (KMK), 2015 WL 1379652, at *16 (S.D.N.Y. Mar. 26, 2015) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). This may be demonstrated by reference to complaints in other cases, but those "must involve factually similar misconduct, be contemporaneous to the misconduct at issue in the plaintiff's case, and result in an adjudication of liability" in order to suffice. *Buari v. City of New York*, 530 F. Supp. 3d 356, 399 (S.D.N.Y. 2021). A claim may likewise be supported by reports not contained in a complaint, provided that "those reports are sufficiently connected to the specific facts of the case and are of relatively recent vintage." *Greene v. City of New York*, 725 F. Supp. 3d 400, 430 (S.D.N.Y. 2024) (quoting *Breton v. City of New York*, 404 F. Supp. 3d 799, 817 (S.D.N.Y. 2019)).

A "deliberate[-]indifference" theory, in turn, can be supported by allegations that "a local government [has been] faced with a pattern of misconduct and [done] nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007); *see City of Canton*, 489 U.S. at 390. Such a claim requires allegations "that defendants knew to a moral certainty that the City would confront a given situation; the situation presented the City with a difficult choice or there was a history of its mishandling the situation; and the wrong choice by the City would frequently cause the deprivation of plaintiffs' rights." *Reynolds*, 506 F.3d at 192. "Liability for deliberate indifference can be based upon a failure to train or a failure to supervise or discipline." *Buari*, 530 F. Supp. 3d at 399 (S.D.N.Y. 2021).

Plaintiff here advances both a widespread-practice and a failure-to-supervise theory.[2]

### a. Widespread Practice

Plaintiff's widespread-practice theory is pled in a somewhat redundant and confused manner. *See* SAC ¶¶ 198 ("Sexual assault of civilians by New York City police officers is a widespread problem within the New York City Police Department."), 215 (alleging 14 different "widespread, well-settled customs and policies," including multiple hair-splitting variations on the theme of failure to supervise). Nevertheless, "[w]hile particular facts supporting each claim"— namely, widespread practice and failure to supervise—"are certainly related, the theories are distinct." *Rutherford v. City of Mount Vernon*, 698 F. Supp. 3d 574, 617 (S.D.N.Y. 2023). Accordingly, in addition to her failure to supervise theory, the Court construes Plaintiff's Second Amended Complaint as alleging a widespread practice of "[s]exual assault of civilians by New York City police officers." SAC ¶ 198.

Plaintiff's widespread-practice theory is facially implausible. As an initial matter, "[P]laintiff has defined the alleged 'custom or policy' so broadly that [s]he takes an almost impossible burden upon [her]self." *Walker v. City of New York*, No. 12 Civ. 5902 (PAC), 2014 WL 1259618, at *3 (S.D.N.Y. Mar. 18, 2014) (cleaned up, quotation omitted). Plaintiff seeks to cast the practice of "sexual assault" as a widespread phenomenon in the relations between the entire NYPD—including "[a]uxiliary police officers," who have different training and responsibilities with respect to the general public, SAC ¶ 35—and the entire civilian population—including

---

[2] Plaintiff has abandoned that version of her deliberate-indifference theory that was premised upon an alleged failure to train, Opp. at 12 n.2 ("acknowledg[ing] the merit of Defendant's argument regarding the failure to train"), leaving only her allegations of failure to supervise, *id.* at 12. While it is important for the Court to "analyze these theories separately," *Bauri*, 530 F. Supp. 3d at 399, the Court nevertheless notes that "the stringent causation and culpability requirements set out in [*City of Canton*] have been applied to a broad range of supervisory liability claims," *Reynolds*, 506 F.3d at 192. The Court also notes at the outset that Plaintiff's failure to intervene claim is brought only against the John and Jane Doe Officer Defendants—none of whom have been identified or served—and not the City itself. *See* SAC at Count III.

"youth," *id.* ¶¶ 199, 202, 205, arrestees, ¶¶ 200, 205, "incapacitated wom[e]n," ¶ 204, and even "fellow police officer[s]," ¶ 207, ¶ 210.

Plaintiff alleges the following facts in support of her argument that sexually assaulting civilians is a practice so widespread among NYPD officers that it constitutes a *de facto* custom or policy:

- Two out of five young women in a 1,000-person study—conducted at an unspecified time by an unspecified entity and using unspecified methods—reported unspecified forms of sexual harassment by NYPD officers.  SAC ¶ 199.

- A woman reported in 2017 that she had been raped while in custody for marijuana possession.  SAC ¶ 200.

- A woman filed a lawsuit in 2019 accusing a NYPD officer of rape.  SAC ¶ 201.

- A disciplinary judge, presumably within the NYPD, found in 2021 that two NYPD officers had exchanged sexually explicit text messages with, and inappropriately touched, a fifteen-year-old girl.  SAC ¶ 202.

- In 2022, the City of New York settled a lawsuit accusing two NYPD officers of rape.  SAC ¶ 203.

- In 2024, someone reported that two NYPD officers had raped an incapacitated woman.  SAC ¶ 204.

- At some unspecified time, two NYPD officers pled guilty to bribery and official misconduct after having been charged in an unspecified jurisdiction with having kidnapped, sexually assaulted, and raped an 18-year-old girl who was in custody for marijuana possession, and a City Council Member publicly indicated dissatisfaction with this outcome.  SAC ¶¶ 205–206.

- A high-ranking detective stalked, harassed, and eventually raped a fellow police officer, and was not prevented from doing so despite the fact that many NYPD employees were aware of his misconduct.  SAC ¶¶ 207–209.

- In December of 2022, there were at least 87 NYPD officers who were facing lawsuits alleging sexual misconduct with fellow officers, and 27 of them were promoted, while only two were either terminated or demoted.  SAC ¶ 210.

Putting aside generalized allegations of sexual harassment, SAC ¶ 199, and of sexual assault against other officers,[3] SAC ¶ 207–209, 210, and victims who were in police custody, SAC ¶ 200, 205, Plaintiff's litany amounts at most to an allegation that on four occasions since 2017, NYPD officers have been accused of sexually assaulting civilians who were not in custody, resulting in findings of liability—including, for purposes of this motion to dismiss, settlements—in only two instances.[4]

These allegations are insufficient to survive a motion to dismiss Plaintiff's claims against the City.  *See Buari*, 530 F. Supp. 3d at 406 (S.D.N.Y. 2021) ("Even drawing reasonable inferences in Buari's favor, such a relatively small number of cases over the course of two decades in such a large municipality does not plausibly suggest that the alleged practice is so widespread as to have the force of law, or so manifest as to imply the constructive acquiescence of senior policy-making officials." (citations and quotations omitted)); *Moses v. Westchester Cnty. Dep't of Correction*, 10

---

[3] Affording Plaintiff the benefit of every reasonable inference, the Court assumes at this stage that, unless the Second Amended Complaint states otherwise, allegations of prior incidents of sexual assault by officers involved civilian victims.

[4] The Parties engage in a back-and-forth on the edge of judicial notice, disputing and elaborating upon the facts that might be contained in extrinsic documentation of the incidents alleged in the Second Amended Complaint.  *See* Opp. at 12–15; Reply at 2–5.  The Court avoids that rabbit-hole, instead confining itself to the allegations contained in the Second Amended Complaint.  *See An v. City of New York*, 230 F. Supp. 3d 224, 231 n.2 (S.D.N.Y. 2017) (declining to consider allegations developed in the memorandum of law in opposition to a motion to dismiss, but not contained in the complaint itself).

Civ. 9468 (ER), 2017 WL 4386362, at *13 (S.D.N.Y. Sept. 29, 2017) ("[T]he Court is unable to infer a pattern of excessive force from these two isolated incidents over a period of five years."), *aff'd sub nom. Moses v. Westchester Cnty. Dep't of Corr.*, 739 F. App'x 66 (2d Cir. 2018); *An*, 230 F. Supp. 3d at 229–30 (S.D.N.Y. 2017) ("Plaintiff cites six lawsuits filed between 2012 and 2016 and one newspaper report. But the Complaint fails to allege that any of the six lawsuits, which were filed over a course of four years, resulted in a finding that the NYPD officers violated the plaintiffs' First Amendment rights."); *Walker*, 2014 WL 1259618, at *3 ("The paltry number of complaints (none resulting in an adjudication of liability), spread over a period so long in a city so large, hardly suggests the frequency or pervasiveness of the purported custom that is required to state a *Monell* claim.").

### b. **Failure to Supervise**

Plaintiff also casts her *Monell* allegations in the mold of a deliberate-indifference theory. *See* SAC ¶¶ 215; 218. In sum and substance, Plaintiff alleges that various "failures of the Department and city . . . to adequately . . . supervise employees and supervisors amounted to deliberate indifference to the fact that inaction would, and proximately did, result in the violation of Plaintiff's rights by Auxiliary Officer Guerrero." SAC ¶ 218. This theory is likewise implausible.

The Court notes that, unlike in the context of a widespread-practice theory, a municipality's deliberate indifference might "[i]n limited circumstances" be established without reference to "a pattern of similar violations" pre-existing the incident giving rise to the complaint. *Moses*, 2017 WL 4386362, at *15. So, for example, in a case involving a "unique context" with specifically defined roles and "power imbalances" giving rise to an "affirmative protective duty" and "criminal laws" forbidding any and all sexual contact, it may well be the case "that a single, prior report of

9

sexual abuse . . . would have put the policymaker on notice" of deficiencies in training or supervision.   *Doe 1 v. Cnty. of Rockland*, No. 21-CV-6751 (KMK), 2025 WL 945873, at *20 (S.D.N.Y. Mar. 28, 2025) (emphasis omitted, discussing *Cash v. County of Erie*, 654 F.3d 324, 335–36 (2d Cir. 2011) (addressing claim of sexual assault of inmate by prison guard)).[5]  As applied here, this merely reflects the principle that "[t]here is no bright line rule for how many complaints of civil rights violations is sufficient to show the need for more supervision, nor is there a bright line rule for how recent those complaints must be." *Tieman*, 2015 WL 1379652, at *20.

But allegations of notice that some constitutional violation is or might be occurring—even if present, which is just barely the case here[6]—are, in any event, not enough.  *See Tieman*, 2015 WL 1379652, at *21 ("[A]n allegation of numerous claims of excessive force by itself is insufficient to raise an inference of deliberate indifference due to failure to supervise.").  Instead, what matters is whether the City is plausibly alleged to have exhibited deliberate indifference to the risk of that violation in its response to the notice received.  *Id.*

Unlike a plaintiff proceeding on a widespread-practice claim, then, one who pursues "a failure to train or supervise claim has a heavy burden . . . to show that the municipality's response was so patently inadequate to the task as to amount to deliberate indifference." *Cnty. of Rockland*,

---

[5] The Parties do not directly brief the issue of whether the "affirmative duty" and "criminal laws" upon which *Cash* turned apply to this case.  *See Cash*, 654 F.3d at 335.  The Court's independent review confirms that they do not, given that Plaintiff was at no point detained by or in the custody of Auxiliary Officer Guerrero.  *See id.* ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general wellbeing."); N.Y. Penal Law § 130.05(3)(j) (deeming persons "detained or otherwise in the custody of a police officer" incapable of consent to sexual activity); *Castilla v. City of New York*, No. 09 Civ. 5446 (SHS), 2012 WL 5510910, at *1–2, 5 (S.D.N.Y. Nov. 14, 2012) ("[Plaintiff] makes no attempt to argue that" the officer who had been criminally prosecuted for sexually abusing her during the execution of a search warrant at her then-boyfriend's home and subsequent attempts, including at the police precinct, to recruit her as an informant "was acting under similar statutory conditions" to those applicable in *Cash* "when attempting to recruit confidential informants.").

[6] *See Cnty. of Rockland*, 2025 WL 945873, at *20 ("[T]he only allegation that the County was on actual notice of a specific instance of sexual misconduct" was, because it involved a context meaningfully different from the situation giving rise to the complaint, "insufficient to put the County on notice such that the need for corrective action or supervision was obvious." (quotation omitted)); *An*, 230 F. Supp. 3d at 231 (S.D.N.Y. 2017) ("[S]ix lawsuits and one newspaper article over the span of four years is insufficient to plausibly allege the need was obvious.").

2025 WL 945873, at *21 n.19 (quotation omitted) (resolving the "superficial[] . . . tension between" the court's treatment, at the pleadings stage, of plaintiff's deliberate-indifference theory, on the one hand, and her widespread-practice theory, on the other).  This involves assessing whether it has been plausibly alleged that a municipality's response was inadequately calibrated to an alleged quantum and kind of notice.  Accordingly,

> a plaintiff may plead (1) that there was a pattern of allegations of or complaints about similar unconstitutional activity and (2) that the municipality *consistently failed to investigate* those allegations.  [Or], a plaintiff may plead (1) that there was a pattern of actual similar constitutional violations and (2) the municipality *consistently failed to discipline* those involved.

*Tieman*, 2015 WL 1379652, at *21 (emphasis original).

Here, in light of what limited notice the City had about the risk of non-custodial, officer-on-civilian sexual assault, Plaintiff has not alleged a response that was so inadequate as to amount deliberate indifference.  *See An*, 230 F. Supp. 3d at 231 ("Plaintiff's argument is unavailing as to both parts—that the City had notice that the need to act was obvious and that it took no corrective action.").

In assessing the degree to which the City was on notice about the risk of non-custodial, officer-on-civilian sexual assault, the Court puts to the side those allegations of prior constitutional violations involving materially different circumstances and conduct.  *See Cnty. of Rockland*, 2025 WL 945873, at *20–21 (allegation of prior instance of sexual misconduct "that occurred *outside* the Jail with a *former* inmate no longer in custody" did not "put the County on notice . . . that current policies had proved an insufficient deterrent to sexual exploitation" with respect to guard-on-inmate sexual exploitation (emphasis original, quotation omitted)).  Accordingly, the Court again sets aside allegations of generalized sexual harassment, SAC ¶ 199, and incidents involving victims who were themselves police officers, SAC ¶¶ 207–209, 210, or

11

victims who were in custody or detained at the time of the alleged assault, SAC ¶ 200, 205.  At least half of the allegations that remain—two out of four—involved only reports or complaints not alleged to have resulted in a determination of liability.  *See* SAC ¶¶ 201, 294; *Rasmussen*, 766 F. Supp. 2d 399, 409 (E.D.N.Y. 2011) ("Plaintiffs seem to proceed on the assumption that if a complaint, whether administrative or by way of a civil action, is filed against an officer, it follows *ipso facto* that he is guilty of a constitutional violation, a proposition I cannot accept.").  The Court also notes that virtually none of Plaintiff's allegations of prior specific incidents involve auxiliary officers.

Even more fundamentally, "the [Second Amended] Complaint is insufficient in alleging that the City, once on notice, failed to take corrective action required to show deliberate indifference."  *An*, 230 F. Supp. 3d at 231; *see also Walker v. City of New York*, No. 14–CV–808 (ER), 2015 WL 4254026, at *11 (S.D.N.Y. July 14, 2015) ("Even if Plaintiff had shown an obvious need for more or better supervision by listing the numerous lawsuits and complaints, he has not stated any facts to show that the City has acted with deliberate indifference.").  Allegations that no disciplinary action was taken in response to complaints, absent a finding of liability, are insufficient to establish deliberate indifference.  *Tieman*, 2015 WL 1379652, at *21.  Allegations of prior incidents to which criminal jeopardy attached are similarly insufficient.  *An*, 230 F. Supp. 3d at 231.  Finally, allegations of prior incidents where Plaintiff "does not allege any specific facts regarding whether the City investigated" (in the case of complaints) "or disciplined" (in the case of actual violations) "the officers" involved likewise cannot support a claim of deliberate indifference.  *Id.*

Because Plaintiff has not alleged "a history of conduct rendering . . . untenable" the assumption that existing supervisory mechanisms coupled with "common sense," *Walker*, 974 F.2d

at 300, should suffice to deter officers from sexually assaulting civilians, Plaintiff's deliberate-indifference theory fails.[7]  *See Cnty. of Rockland*, 2025 WL 945873, at \*19 ("Put differently, deciding not to rape someone is not the kind of difficult choice of the sort that training will make less difficult." (cleaned up, quotation omitted)).

## II.  <u>State Law</u>

Plaintiff also brings claims against the City under state law.  *See* SAC at Count X.  "Under New York law, a notice of claim is a condition precedent to bringing personal injury actions against municipal corporations," *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999), and "failure to comply speaks to the subject matter jurisdiction of this Court to consider the state-law claims." *Columna v. City of New York*, 1:19-cv-3801 (MKV), 2022 WL 767103, at \*6 (S.D.N.Y. Mar. 14, 2022).  Accordingly, the plaintiff in such a case "must plead that (1) the plaintiff has served the notice of claim; (2) at least thirty days have elapsed since the notice was filed (and before the complaint was filed); and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim."[8]  *Id.* (quotation omitted).  With respect to the form and contents of the required notice,

> General Municipal Law § 50–e (2) requires written notice, "sworn to by or on behalf of the claimant," which sets forth "the name and post-office address of each claimant, and of his attorney, if any," "the nature of the claim," "the time when, the place where and the manner in which the claim arose" and "the items of damage or injuries claimed to have been sustained so far as then practicable."

*Rosenbaum v. City of New York*, 8 N.Y.3d 1, 10, 861 N.E.2d 43, 48 (N.Y. 2006) (quoting N.Y. Gen Mun. Law § 50-e(2)).  Moreover, "[i]n order for service of a notice of claim upon the City of New

---

[7] As previously noted, this case is not controlled by *Cash*, in which the Second Circuit expressly stated that its holding was cabined "by the particular context of a no-tolerance policy backed by" the "specific criminalization of **any** sexual activity between guards and prisoner."  *Cash*, 654 F.3d at 336 n.5 (emphasis original).

[8] The City does not here challenge the timeliness of any such notice, but rather its form and contents.  *See* MTD at 11 (arguing that a "preservation letter served on the NYPD" is "not . . . a notice of claim as required by statute.")

York to be proper, it must be made upon either the Corporation Counsel, his or her designee, or the Comptroller of the City of New York." *Khela v. City of New York*, 91 A.D.3d 912, 913–14, 937 N.Y.S.2d 311, 313 (2d Dep't 2012) (citation omitted).

Plaintiff correctly notes that, "[r]easonably read, the statute does not require" the nature of the claim and related information "to be stated with literal nicety or exactness." Opp. at 18 (quoting *Brown v. City of N.Y.*, 95 N.Y.2d 389, 393, 740 N.E.2d 1078, 1080 (N.Y. 2000) (quotation and citations omitted)). Accordingly, with respect to the substance of the notice provided, the Court must "focus on the purpose served by a Notice of Claim: whether based on the claimant's description municipal authorities can locate the place, fix the time and understand the nature of the accident." *Brown*, 95 N.Y.2d at 393, 740 N.E.2d at 1080 (citations omitted).

This margin for error with respect to the substance of the notice provided, however, does not change the reality that "[t]he Court cannot exempt Plaintiff from the notice of claim requirements under New York law." *Columna*, 2022 WL 767103, at *7; *see also Pan v. City of Niagara Falls*, 23-7513, 2025 WL 1169057, at *3 (2d Cir. Apr. 22, 2025) (summary order) ("The district court properly dismissed the state law tort claims for failure to file a notice of claim with municipal defendants City of Niagara Falls, Niagara County, and Niagara Falls Water Board."). Nor does it change the reality that those requirements are "construed strictly by New York state courts." *Columna*, 2022 WL 767103, at *6 (citing *Hardy*, 164 F.3d at 793). In other words, if a plaintiff does not submit a notice of claim at all, or fails to do so according to the "stringent . . . requirements of the statute," his or her claims must be dismissed. *Horvath v. Daniel*, 423 F. Supp. 2d 421, 424 (S.D.N.Y. 2006) (denying leave to amend as futile).

Here, Plaintiff argues that a "non-spoliation demand to preserve all evidence possibly related to our clients' [sic] potential claims" submitted by her former attorney to the 32nd Precinct

14

of the NYPD, [ECF No. 53-1] (the "Demand Letter") at 1,[9] constituted substantial compliance with the "purpose of the notice-of-claim requirement." Opp. at 15; *see also* Opp. at 18 ("Plaintiff's notice complies with the purpose of the statute, and her claim should not be thrown out based on technicalities . . . ."). This unsworn statement, signed only by Plaintiff's former attorney, which does not set forth the post-office address of the claimant and was served on a Precinct of the NYPD, is not compliant with the formal requirements of the notice-of-claim statute. *See Shahid v. City of New York*, 208 A.D.3d 1380, 1381, 174 N.Y.S.3d 609, 610 (2d Dep't 2022) ("[D]efendant established its prima facie entitlement to judgment as a matter of law by submitting evidence that the notice of claim that was the basis of this action was not properly verified."); *Khela*, 91 A.D.3d at 913–14, 937 N.Y.S.2d at 313.

Moreover, even considering the leeway afforded to plaintiffs with respect to the substance of the notice provided, *see Brown*, 95 N.Y.2d at 393, 740 N.E.2d at 1080, Plaintiff's purported notice of claim was inadequate to distill her "theory of liability," *Jacobowitz v. City of New York*, 222 A.D.3d 953, 955, 202 N.Y.S.3d 446, 448 (2d Dep't 2023); *Mosley v. City of New York*, 217 A.D.3d 857, 859–60, 191 N.Y.S.3d 699, 702–03 (2d Dep't 2023), in keeping with the purposes of the statute, *cf. Brown*, 95 N.Y.2d, 740 N.E.2d. Specifically, the purported notice of claim concerns the conduct of one officer at one precinct, Demand Letter at 1, only scarcely suggests the possibility of *Monell* liability against the City, *id.* (referring to "an anticipated civil lawsuit against the NYPD relating to" allegations about Auxiliary Officer Guerrero), says nothing about damages,

---

[9] The Court considers the Demand Letter, Plaintiff's purported notice of claim, as incorporated by reference in Plaintiff's Second Amended Complaint. *See Dunkelberger v. Dunkelberger*, No. 14–CV–3877 (KMK), 2015 WL 5730605, at *5 (S.D.N.Y. Sept. 30, 2015); SAC ¶ 268 ("Plaintiff served a notice of her claims on the City of New York on June 26, 2023."); Opp. at 16 (citing to the Demand Letter, dated June 26, 2023, as Plaintiff's "notice of her claim"). The Court also notes that Plaintiff's second amendment was in response to the City's request for a pre-motion conference pointing out that Plaintiff had failed to allege compliance with the notice-of-claim statute. *See* [ECF No. 45] at 3–4; [ECF No. 47].

and repeatedly refers to litigation in the subjunctive mood, *id.* at 1 ("our clients' potential claims"),

2 ("[I]f there is litigation, it will be through discovery . . . .").

The highest court in the State of New York has effectively foreclosed Plaintiff's arguments

here:

> The requirements of General Municipal Law § 50–e (2) are not fulfilled when a plaintiff or an attorney writes a letter to a city agency suggesting that unmet demands might lead to litigation. If they were, the City would be placed in an untenable position since any number of everyday disputes between citizens and city agencies will inevitably yield streams of similar, vaguely threatening correspondence. Section 50–e does not abet notice of claim by stealth.

*Rosenbaum*, 8 N.Y.3d at 11–12, 861 N.E.2d at 49 (2006).

### CONCLUSION

For the foregoing reasons, all of Plaintiff's claims against the City are dismissed.

**SO ORDERED.**

**Date: March 17, 2026**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**

16